IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TOBY HERNANDEZ RODRIGUEZ,<br><br>Defendant. | CR 24-134-BLG-SPW<br><br>ORDER |

On November 7, 2024, Defendant Toby Hernandez Rodriguez moved to dismiss the indictment charging him with being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) based on the United States Supreme Court's decision, *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). (Docs. 18, 19). Specifically, Rodriguez contends that the Government cannot show that § 922(g)(1), as applied to him, is consistent with the Nation's historical tradition of firearm regulation. (Doc. 19 at 2).

The Government responded on November 19, 2024, arguing that the Court should deny Rodriguez's motion because of "this Court's post-*Bruen* holding that § 922(g)(1) is consistent with this Nation's historical tradition of firearm regulation." (Doc. 20 at 2 (citing *United States v. Buffalo Bulltail*, No. CR 22-86BLG-SPW, 2023 WL 3947823 (D. Mont. June 12, 2023))). Furthermore, the Government notes that

even in the wake of *Bruen*, the Ninth Circuit's decision in *United States v. Vongxay*, still applies. (Doc. 20 at 24 (citing 594 F.3d 1111 (9th Cir. 2010))).

Rodriguez did not reply.

For the following reasons, the Court denies Rodriguez's motion.

## I. Background

On September 19, 2024, Rodriguez was charged with possession of a firearm or ammunition by a felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 2). According to Rodriguez, on January 25, 2024, law enforcement conducted a traffic stop and located a gun inside the vehicle driven by Rodriguez. (Doc. 19 at 3). Law enforcement officers arrested Rodriguez at the direction of state probation and parole. (*Id.*). At the time of Rodriguez's arrest, he had felony convictions for: (1) criminal possession of dangerous drugs; (2) bail jumping; and (3) felon in possession. (*Id.*). He was indicted by a grand jury on September 19, 2024. (Doc. 2).

## II. Legal Standard

Federal Rule of Criminal Procedure 12(b)(1) provides that a party may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits. A pretrial motion is proper when it involves questions of law rather than fact. *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452

(9th Cir. 1986). The Court has determined Rodriguez's motion is appropriate for pre-trial resolution because it solely involves a question of law.

## III. Analysis

The Second Amendment guarantees as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In 2022, the Supreme Court decided *Bruen*, finding that the Second Amendment's plain text coupled with an historical analysis of our Nation's gun regulation traditions protects an individual's right to carry a handgun for self defense. *Bruen*, 597. U.S. at 17, 28–29. The Court rejected the means-end scrutiny tests previously applied by appellate courts, holding instead that courts must apply "[t]he test set forth in *Heller*" to "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26 (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008)).

Here, Rodriguez argues that under *Bruen*, the Second Amendment's text protects Rodriguez's conduct and thus, "the Government bears the burden of showing that [18 U.S.C. §] 922(g)(1) as applied to Rodriguez is consistent with the [N]ation's historical tradition of firearm regulation." (Doc. 19 at 2).

The Government responded to Rodriguez asserting that the Court "should adhere to the Ninth Circuit's decision in *United States v. Vongxay* . . . which upheld

3

§ 922(g)(1) against a Second Amendment challenge." (Doc. 20 at 2). The Government argues that *Vongxay*'s reliance on certain categories of longstanding Second Amendment regulatory measures echoes the Supreme Court's analyses in *Bruen* and *United States v. Rahimi*, 144 S. Ct. 1889 (2024). (Doc. 20 at 4). Further, the Government emphasizes that Montana courts, including this Court, have "unanimously determined that *Bruen* failed to overturn *Vongxay* and that the restrictions imposed by [] § 922(g)[(1)] do not violate the Second Amendment." (Doc. 20 at 2 (citations omitted)).

Before turning to the parties' arguments, the Court must briefly address the Second Amendment's jurisprudence status in the Ninth Circuit as it relates to § 922(g)(1). In May 2024, a Ninth Circuit three judge panel found that § 922(g)(1) was unconstitutional as applied to the nonviolent felon defendant in that case. *United States v. Duarte*, 108 F. 4th 786 (9th Cir. 2024). At that time, *Duarte* was the most recent decision related to the constitutionality of § 922(g)(1) in the Ninth Circuit. In July 2024, the Ninth Circuit granted rehearing *en banc* in *Duarte* and vacated the panel's decision. 101 F.4th 657, *reh'g en banc granted, opinion vacated*, 108 F.4th 786 (9th Cir. Jul. 17, 2024). This Court recognizes that "a decision that has been vacated has no precedential authority whatsoever." *Marley v. United States*, 567 F.3d 1030, 1038 (9th Cir. 2009) (internal citation omitted).

4

Provided the vacated status of *Duarte*, the Court will first address *Vongxay*'s authority as relied on by the Government. The Court will then analyze Rodriguez's arguments under *Bruen*.

*A.   Vongxay Governs*

This Court is bound by the ruling in *Vongxay*. Without *Duarte*, *Vongxay*'s precedent stands, as this Court, other judges in the District of Montana, and other district courts in the Ninth Circuit have repeatedly held before *Duarte* and after *Duarte* was vacated. *See, e.g., United States v. Page*, CR 23-06-H, 2023 WL 8702081, at *2 (D. Mont. Dec. 15, 2023) (collecting District of Montana and other Ninth Circuit district courts holding that *Vongxay* "remains binding authority after *Bruen*"); *United States v. Thomas*, 2:22-cr-0129, 2024 WL 3459059, at *1 (D. Nev. July 18, 2024) (applying *Vongxay* after *Duarte* was vacated); *United States v. Coleman*, CR-23-02363-001, 2024 WL 3890710, at *2 (D. Ariz. July 29, 2024), *report and recommendation adopted by* 2024 WL 3888700 (same). Those courts applying *Vongxay* have held that § 922(g)(1) "passes constitutional scrutiny." *Page*, 2023 WL 8702081, at *2.

This Court joins in upholding § 922(g)(1) because *Vongxay* is clear on the matter. 594 F.3d at 1116–17; *see also United States v. Whitney*, No. 22-10326, 2024 WL 1429461, at *2 (9th Cir. Apr. 3, 2024), *petition for cert. docketed* (Aug. 26, 2024) ("The felon-in-possession statute, 18 U.S.C. § 922(g)(1) is facially

5

constitutional."). The court in *Vongxay* reasoned in accordance with *Heller* that denying felons the right to bear arms is consistent with the Second Amendment to maintain the security of a free state. *Vongxay*, 594 F.3d at 1117. *Vongxay* also is clear that there is no constitutional distinction between violent and nonviolent felons. *Id.* at 1116–17; *see also United States v. Phillips*, 827 F.3d 1171, 1173–74 (9th Cir. 2016); *Coleman*, 2024 WL 3890710, at *2.

Rodriguez's challenge falls within *Vongxay*'s jurisprudence and thus, § 922(g)(1)'s application to Rodriguez applies. Accordingly, Rodriguez's challenge fails under *Vongxay*.

B.  Bruen *Analysis*

Like other rights, Second Amendment rights are not unlimited. *Bruen*, 597 U.S. at 21. The "ever-evolving 'history-and-tradition' test outlined in *Bruen* and modified" by the Court's decision in *United States v. Rahimi* "requires a two-step analysis to determine whether a law complies with the Second Amendment." *United States v. Youngblood*, __ F. Supp. 3d__ 2024 WL 3449554, at *3 (D. Mont. 2024) (citing 602 U.S.__ , 144 S. Ct. 1889, 1926–27 (2024) (Jackson, J., concurring)).

First, if "the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24. Second, to regulate protected conduct, the government must show that its regulation "is consistent with the Nation's historical tradition of firearm regulation." *Id.* The

historical analysis requires courts to pay close attention to "[w]hy and how the regulation burdens the right." *Rahimi*, 144 S. Ct. at 1898; *Bruen*, 597 at 29. When engaging in analogical inquiry, "[a] court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'applying faithfully the balance struck by the founding generation to modern circumstances.'" *Rahimi*, 144 S. Ct. at 1898 (quoting *Bruen*, 597 U.S. at 29); *see also Bruen*, 597 U.S. at 30 (requiring the government to "identify a well-established and representative historical *analogue*, not a historical *twin*.") (emphasis in original). Specifically, "the government must prove that the firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 20. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, 597 U.S. at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961).

    1.    *Plain Text*

Considering the first step of the *Bruen* test, Rodriguez argues that his "conduct in possessing a firearm under [§] 922(g)(1) is protected under the Second Amendment's guarantee." (Doc. 19 at 5). Neither party briefs whether Rodriguez is part of "the people" whom the Second Amendment protects or whether Rodriguez's firearm is "in common use." *See Bruen*, 597 U.S. at 31–32.

Though neither party briefs the issue, this Court cannot ignore that no higher court has ruled on whether felons are included in the "people" protected by the Second Amendment. District courts in the Ninth Circuit seem to agree that, under *Heller* and *Bruen*, the Second Amendment right is limited to law-abiding citizens, not felons. *See United States v. Butts*, 637 F. Supp. 3d 1134, 1137–38 (D. Mont. 2022) (holding that the Second Amendment is not extended to felons based on *Bruen* and *Heller*'s repeated references to "law-abiding citizens" and statements that felon dispossession statutes are "presumptively lawful"); *United States v. Roberts*, __ F. Supp. __, 2024 WL 50889, at *12 & n.157 (D. Alaska 2024) (collecting cases holding the same).

In contrast, other courts apply a "rights-based analysis," which asserts that "all people have the right to keep and bear arms but that history and tradition support Congress's power to strip certain groups of that right."[1] *Roberts*, 2024 WL 50889, at *12 (quoting *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (J. Barrett, dissenting)); *see also United States v. Montes*, No. 1:23-cr-00182-1, 2024 WL 3904631, at *4 (N.D. Ill. Aug. 22, 2024) (holding that felons are within the "people" covered by the Second Amendment because *Heller* and *Bruen*'s discussion of law-

---

[1] *Duarte* adopted the rights-based approach, holding that "the people" means "all Americans," not a "unspecified subset" of people. 101 F.4th at 671 (quoting *Heller*, 554 U.S. at 580–81); *Youngblood*, 2024 WL 3449554, at *4 (relying on *Duarte* before it was vacated in holding that a defendant charged under § 922(g)(8) is covered by the Second Amendment's plain text because he is "an American citizen who possessed arms in common use."). Again, as *Duarte* is no longer good law, the Court is not bound to apply the rights-based approach.

8

abiding citizens' Second Amendment rights did not decide the question of the scope of the right and because "the people" covered by other constitutional rights only sometimes excludes felons).

As the matter is unresolved by the Ninth Circuit and the parties here do not brief it, the Court will assume without deciding that the first step is satisfied. *See Roberts*, 2024 WL 50889, at * 12 ("Given these disparate approaches to determining whether an individual's conduct is plainly covered by the Second Amendment, the Court assumes that the Second Amendment's plain text covers Roberts' conduct[.]").

2. *Historical Analogues*

Moving to the second step, the Court finds that historical analogues for the prohibition on the possession of weapons by both nonviolent and violent felons exist and are well documented in the courts. *See Medina v. Whitaker*, 913 F.2d 152, 158 (D.C. Cir. 2019) (discussing the evidence of the "tradition and history" that demonstrates that felons, including "non-dangerous" felons, do not have a right to bear arms under the Second Amendment); *United States v. Ramos*, 2:21-cr-00395, 2022 WL 17491967, at *4–*5 (C.D. Cal. Aug. 5, 2022) (discussing laws in existence at the founding that provide representative analogues to the felon in possession statute).

9

Rodriguez argues that the Government cannot meet its burden in showing how § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation. (Doc. 19 at 5). Further, Rodriguez argues that § 922(g)(1) is not analogous to any founding period restrictions and is therefore, unconstitutional as applied to him. (*Id.* at 6). The Government makes minimal efforts to justify the § 922(g)(1) regulation or demonstrate how the regulation is consistent with the principles that underpin this Nation's regulatory tradition. *Bruen*, 597 U.S. at 24. Nevertheless, the Court finds that § 922(g)(1) is "relevantly similar" to laws that this Nation's tradition is understood to permit. *Rahimi*, 144 S. Ct. at 1898.

Most of the Founding Era laws cited by courts restricted the possession of firearms by unvirtuous persons, which included felons who committed nonviolent crimes. *Medina*, 913 F.3d at 158–59 (describing how nonviolent crimes such as forgery and horse theft were felony crimes at the time of the Second Amendment ratification); *United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir. 2010) ("[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm unvirtuous citizens." (cleaned up)); *Ramos*, 2022 WL 17491967, at *4 (discussing Founding Era laws that allowed for the dispossession of firearms from unvirtuous persons, which included common law felons).

This conclusion is affirmed by the Court's decisions in *Heller*, *McDonald*, *Bruen*, and *Rahimi*. In *Heller*, the Court wrote that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ...." 554 U.S. at 626. Two years later, in *McDonald v. City of Chicago*, the Court "repeat[ed] [its] assurances" that felon dispossession laws remain valid. 561 U.S. 742, 786 (2010). Then, in *Bruen*, the majority stated that its holding "was in keeping with *Heller*" and repeatedly used the term "law-abiding citizen" in reference to the scope of an individual's Second Amendment rights. 597 U.S. at 9, 29, 31, 38, 60, 70. In a concurring opinion in *Bruen*, Justice Kavanaugh, joined by the Chief Justice, "underscore[d]" that "the Second Amendment allows a 'variety' of gun regulations," and that nothing in the Court's opinion "'should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]'" *Id.* at 81 (quoting *Heller*, 554 U.S. at 626 n.26).

Finally, the Chief Justice in the *Rahimi* majority once again affirmed that "many ... prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" 144 S. Ct. at 1902; *see also United States v. Morales*, No. 24-cr-84, 2024 WL 3345982, at *2 (S.D.N.Y. July 8, 2024) (citing *Rahimi*, 144 S. Ct. at 1901) (holding that the *Rahimi* majority's "discussion of the long history of firearm regulations prohibiting dangerous persons from possessing arms aligns with the conclusion of the courts above: that § 922(g)(1), limited as it is

11

to adjudicated felons, is consistent with the nation's historical tradition of firearm regulation.").

Accordingly, the weight of both the historical evidence and Supreme Court precedent demonstrates the constitutionality of 18 U.S.C. § 922(g)(1) as applied to Rodriguez under the *Bruen* framework.

## IV. Conclusion

IT IS SO ORDERED that Defendant Toby Hernandez Rodriguez's Motion to Dismiss (Doc. 18) is DENIED.

DATED this 2nd day of December, 2024.

SUSAN P. WATTERS
United States District Judge