IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 24-134-BLG-SPW |
| Plaintiff, | |
| vs. | ORDER DENYING MOTION TO SUPPRESS |
| TOBY HERNANDEZ RODRIGUEZ, | |
| Defendant. | |

Before the Court is Defendant Toby Hernandez Rodriguez's Motion to Suppress. (Doc. 42). Rodriguez is charged with being a Prohibited Person in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1). (Doc. 2). The charge arises from a traffic stop on January 25, 2024, during which officers observed a firearm at Rodriguez's feet. (Doc. 43-4 at 5). He seeks suppression of all evidence seized pursuant to the traffic stop, arguing law enforcement lacked reasonable suspicion that Rodriguez was driving or occupying the vehicle. (Doc. 42 at 1–2). The Government responded, opposing the Motion (Doc. 47), and Rodriguez replied (Doc. 50).

The Court held a hearing on April 24, 2026, during which Montana Probation and Parole ("P&P") Officer David Kenat, Billings Police Department ("BPD") Officer James Catlin, BPD Officer Nicholas Fonte, Federal Bureau of Investigation

1

Task Force Officer Matthew Henderson, and Bureau of Alcohol, Tobacco, Firearms, and Explosives Task Force Officer Dustin Stroble testified on behalf of the Government. Based on the parties' briefing, the witnesses' testimony, and the video evidence, the Court finds the material facts are not in dispute.

For the following reasons, the Court denies Rodriguez's Motion.

## I.    Background

On September 13, 2023, Officer Henderson conducted surveillance at Rodriguez's residence to locate a vehicle associated with either Rodriguez or his girlfriend, Cherilee Komeotis. (Doc. 43-1 at 1). Both Rodriguez and Komeotis were under P&P supervision.    (Doc. 48-1 at 8).    During the surveillance, Officer Henderson observed a black Chrysler 300 with expired registration parked at the residence; the vehicle was registered to Komeotis. (Doc. 43-1 at 1).

On December 15, 2023, Officer Henderson observed a gold Cadillac Escalade (MT DHS817), also registered to Komeotis, at a different residence under surveillance. (Doc. 43-2 at 1). The following month, on January 23, 2024, he again observed the same Escalade parked at that residence. (Doc. 43-3 at 1). Officer Stroble joined Officer Henderson in the surveillance and followed the Escalade as it left the residence and stopped at a gas station. (*Id.*). Officer Henderson believed the driver was conducting a "heat run" to detect surveillance. (*Id.*).

The driver exited the vehicle and entered the store. (*Id.*). Using binoculars, Officer Stroble confirmed that Rodriguez was the driver. (Doc. 47-1 at 1). After Rodriguez left the store, the officers lost sight of the Escalade. (*Id.*). Officer Henderson then drove directly to Rodriguez's residence, where he observed Rodriguez "park the Escalade and t[ake] some bag[s] upstairs to his apartment." (Doc. 43-3 at 1). Rodriguez then exited the apartment, reentered the Escalade, and drove away. (*Id.*). Officers Henderson and Stroble again lost sight of the vehicle. (*Id.*).

Also on January 23, 2024, Rodriguez failed to appear for his scheduled P&P appointment. (Doc. 48-1 at 4). Subsequently, on January 25, 2024, P&P determined that "[h]is failure to report, history of recent substance abuse, and history of absconding warranted a . . . 3 day hold in jail." (*Id.*).

Later on January 25, 2024,[1] Officer Stroble reported that he "was able to observe [Rodriguez] driving the [same] Escalade." (Doc. 47-1 at 1). He contacted BPD Officer Matthew Bistline, who was in the area Rodriguez was traveling toward. (*Id.*). Officer Bistline was in an unmarked vehicle with Officers Catlin and Kenat. (Doc. 43-4 at 5). Officer Kenat testified that after receiving information from Officer

---

[1] Officer Stroble testified that his report misstated the date, incorrectly listing it as January 26, 2024. (*See* Doc. 47-1).

3

Stroble that they were near the vehicle, he observed the Escalade himself and saw that Rodriguez was the driver.

According to Officer Bistline's report, he "observed a vehicle matching the description of a vehicle belonging to a person wanted by P&P. . . . for failing to report to his P&P Officer and testing positive for illegal narcotics." (*Id.*). He explained that he decided to conduct a traffic stop "due to the fact the registered owner of the vehicle was wanted by [P&P]." (*Id.* at 1). He further noted that P&P had requested that officers arrest Rodriguez if they came into contact with him for a parole violation. (*Id.* at 5).

Officer Bistline stated that he and the other officers "confirmed the license plate (DHS817)." (*Id.*). The vehicle matched the same one previously identified by law enforcement on December 15, 2023, and January 23, 2024. (*See* Doc. 43-3 at 1; Doc. 43-2 at 1). He reported they "knew this vehicle belonged to Toby Rodriguez (the suspect), as he was seen driving [the] vehicle on numerous occasions prior to this incident." (Doc. 43-4 at 5). The officers then broadcasted their location and requested assistance from nearby patrol units to initiate the traffic stop. (*Id.*).

Officer Fonte, who was nearby in a marked patrol vehicle, responded first and conducted a traffic stop based upon the request and information provided by dispatch. (Doc. 47-4 at 1). Officers Bistline, Catlin, and Kenat assisted. (Doc. 43-4 at 5). Upon approach, Officer Fonte instructed the driver to roll down the vehicle's

4

windows and "immediately recognized [Rodriguez] to be the driver." (*Id.*). BPD Sergeant Eric Schnelbach also arrived, opened the driver's side door, and instructed Rodriguez to step out. (Doc. 49, Ex. G at 2:37–40). Once the door was open, Officer Fonte observed a gun on the driver's side floorboard and alerted the other officers. (*Id.* at 2:40–44).

Rodriguez and the occupants were removed from the vehicle. (Doc. 43-4 at 5). During a search incident to arrest, Schnelbach located a plastic baggie and money on Rodriguez's person. (*Id.*). Officer Kenat requested a search of the vehicle. (Doc. 47-2 at 1). Officers then recovered the firearm, determined to be a .40 caliber Smith & Wesson 2.0 handgun. (*Id.*). Officer Catlin ran the serial number through dispatch, which returned as stolen. (*Id.*). Additional suspected narcotics and drug paraphernalia were also located inside the vehicle. (*Id.*).

## II.    Legal Standard

A defendant may challenge the admissibility of evidence prior to trial under Federal Rule of Criminal Procedure 12(b)(3)(C), which governs motions to suppress evidence. The foundation for such challenges lies in the Fourth Amendment, which guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

"In order to effectuate the Fourth Amendment's guarantee of freedom from unreasonable searches and seizures, [the United States Supreme] Court . . . conferred

upon defendants in federal prosecutions the right, upon motion and proof, to have excluded from trial evidence which had been secured by means of an unlawful search and seizure." *Simmons v. United States*, 390 U.S. 377, 389 (1968) (citing *Weeks v. United States*, 232 U.S. 383 (1914)).

When law enforcement violates a defendant's Fourth Amendment rights, the exclusionary rule mandates that "all evidence seized as a result of the [violation] must be suppressed as the fruit of the poisonous tree." *United States v. Morales*, 252 F.3d 1070, 1073 (9th Cir. 2001). A defendant has the ultimate burden of proof on a Fourth Amendment motion to suppress. *United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005).

## III.    Discussion

Under the Fourth Amendment, a seizure occurs "when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). A traffic stop qualifies as a seizure, though it is "a relatively brief encounter," "more analogous to a . . . *Terry* stop than to a formal arrest." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (citation modified).

An officer may initiate an investigatory stop of a vehicle when reasonable suspicion exists, supported by "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular

person detained is engaged in criminal activity." *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000) (quoting *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996)).   Reasonable suspicion is assessed under the totality of circumstances, with appropriate deference to the inferences drawn by the officer on the scene. *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc); *United States v. Valdes-Vega*, 738 F.3d 1074, 1077–79 (9th Cir. 2013).

The analysis also incorporates the collective knowledge of officers working together. *See United States v. Ramirez*, 473 F.3d 1026 (9th Cir. 2007).   "[W]here law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by all." *Illinois v. Andreas*, 463 U.S. 765, 771 n.5 (1983). Each officer is cloaked with the knowledge of "his superior or associates." *United States v. Jensen*, 425 F.3d 698, 704–05 (9th Cir. 2005).

The threshold for reasonable suspicion is "not . . . particularly high." *Valdes-Vega*, 738 F.3d at 1078 (citations omitted).   "The quantum of proof needed . . . is less than a preponderance of evidence, and less than probable cause." *United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000).   Nonetheless, an officer's "inchoate and unparticularized suspicion or 'hunch'" is insufficient to establish reasonable suspicion. *Terry*, 392 U.S. at 27.

Here, Rodriguez argues that the officers lacked reasonable suspicion to stop the Escalade because they had no basis to believe he was the driver and thus acted

7

on a mere hunch. (Doc. 43 at 5–12). The Government counters that reasonable suspicion existed because "Rodriguez was observed driving the vehicle . . . minutes before it was stopped." (Doc. 47 at 8).

The Court agrees with the Government. The observations of Officers Stroble and Kenat provided more than a hunch and satisfied the reasonable-suspicion standard. At the hearing, Officer Stroble testified that on January 25, 2024, he saw the same vehicle he had observed Rodriguez driving two days earlier. He immediately recognized both the vehicle and its license plate and—assisted by streetlight and headlight illumination—recognized Rodriguez through the windshield. He then radioed Officers Bistline, Catlin, and Kenat to report that the Escalade was headed in their direction. Officer Kenat testified that from his vantage point in the rear center seat, he was nearly certain he saw Rodriguez driving. He had known Rodriguez for 20 years and recognized the Escalade as a vehicle Rodriguez commonly used to travel to P&P. Together, these observations supported a reasonable belief that Rodriguez was driving the Escalade.

Rodriguez emphasizes Officer Bistline's misstatement that he decided to commence a traffic stop "due to the fact *the registered owner* of the vehicle was wanted by [P&P]," arguing that Bistline relied on an incorrect assumption that Rodriguez was the registered owner. (*See* Doc. 43 at 7 (emphasis added)). Regardless of Officer Bistline's characterization in his report, Officers Stroble and

8

Kenat personally observed Rodriguez driving the Escalade, which independently supplied sufficient reasonable suspicion.

Once law enforcement observed that Rodriguez was the driver, they had reasonable suspicion to stop the vehicle based on the P&P violations known to Officer Kenat. Officer Kenat testified that Rodriguez had recently used narcotics and failed to report for a P&P meeting—both supervision violations—and that his supervisor instructed him to locate Rodriguez and place him on a 72-hour hold, consistent with standard practice and Montana law. *See* Mont. Code Ann. § 46-23-1012(3) (2025). P&P's directive to arrest Rodriguez, the officers' collective knowledge that he commonly drove the Escalade, and Stroble's and Kenat's direct observations that Rodriguez was driving the Escalade provided specific, articulable facts supporting reasonable suspicion that Rodriguez was both driving the vehicle and wanted for supervision violations.

Because reasonable suspicion justified the stop, Rodriguez's claim that the vehicle search was fruit of the poisonous tree fails. The evidence obtained from the search will not be suppressed.

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.    Conclusion

IT IS HEREBY ORDERED that Defendant Toby Hernandez Rodriguez's

Motion to Suppress (Doc. 42) is DENIED.

DATED this ___5th___ day of May, 2026.

SUSAN P. WATTERS
United States District Judge

10